Good morning, Your Honors. I'd like to reserve two minutes, if I may. The first thing is my client wanted me to expressly convey his gratitude to the Court for allowing him to participate in the pro bono counsel program. In the Third Circuit, we have one, and the contribution we get is so valuable that we really appreciate it. We want to thank you for your participation. It's our pleasure, Your Honor. It seems to me that there are basically two issues here. There are two ways that my client's petition might prevail. I'd like to just focus on those two specific issues and leave the rest on the briefs, unless, of course, Your Honors have questions. First, it seems to me that there's a close question on the issue of aiding and abetting. I think there's no dispute between the parties that aiding and abetting is implicit in the indictment. And I think prior to the Supreme Court decision in 2007, it probably would have been the law in this circuit that in this case, you'd have to conclude this was not categorically a crime of violence because there was nothing in the record to demonstrate that he was not convicted, that he was not pleading to aiding and abetting theory. It's a much closer question, I acknowledge, after the Supreme Court decision. But it does seem to me that the distinction I attempted to draw in the reply brief is the correct one, and that is that the question in that case was whether it was a theft crime, as it fit into a particular category, fit into a particular group of statutes, whereas here the question is a particular aspect of the crime that itself was being committed. I don't think I can be any more eloquent than I was in my previous papers, not that I claim to have been particularly eloquent, but I think Your Honors appreciate my argument, and obviously, I urge you to accept it. The second and more typical or complicated issue, I think, is the issue the Court noted in advance with the Chapman case. It does seem to me that now, quite clearly, in the Ninth Circuit, setting aside the aiding and abetting issue, a conviction under the statute would be a crime of violence, and that if you could set aside aiding and abetting, all you would need to prove a crime of violence would be an indictment saying, you know, listing the words of the statute, and a plea of guilty, and essentially, you would be out of luck. In this case, it's very odd, however, because at the time of the indictment and the plea, the law in the Ninth Circuit was not clear about whether force was a necessary component to Section 1111 violation, and as we indicated in the papers and as we submitted in the addendum, the indictment was modified at the government's request to actually strike out forcibly assault. So the indictment as it was written is not an accurate statement of the law in the Ninth Circuit, so he pled to something. My client pled to an indictment that did not include and, in fact, explicitly excluded. It's not as if this was an oversight and someone mistransliterated the text of the statute. There obviously was some kind of discussion, but the government agreed to strike out that portion of the indictment. So now all it says is that my client resisted, opposed, so forth. There's nothing about force and nothing about assault. So we have the odd situation that now he was convicted based on an indictment that doesn't actually state a crime, if you will, now under Chapman. At the time, of course, it was ambiguous. I'm afraid I don't know, and I can't represent to the Court. It's certainly not in the record. One imagines that there was some negotiation at the time between the government and the defense counsel at the time, cognizant of my client's difficult immigration situation, shall we say. So that leaves one in a difficult position, because if we conclude that, in fact, force is required to violate the statute under it, which obviously is the case now under Chapman, either he pled to something that isn't a crime, or he should be found to have pled guilty to the statute, and now the statute requires violence, and, therefore, he should be denied the opportunity to request asylum on that basis. It seems to me, particularly given the obvious uncertainty at the time, as the State did the law in the Ninth Circuit, and the obvious conclusion that, you know, whether the government maybe was going to have some difficulty proving the force aspect, maybe that was where they compromised, it seems to me that one should not be categorical or sent out on a categorical claim in a case where, at the time, the statute in the mind of the court and the prosecution and the defendant, the statute said something different than it has recently been clarified to say. Is your argument going to the validity of the plea itself or whether or not it qualifies as a crime of violence? Only the latter, I think, Your Honor. I wouldn't claim that somehow that should be vacated or something like that. I just mean that, given the uncertainty at the time, it seems like it would be unfair to impose the current requirements in addition to what he actually pledged. Or is any plea is entered into with the background of uncertainty as to what the law might be when it becomes relevant for immigration purposes? That's certainly right, Your Honor. And if he had entered a plea and the law was uncertain and he had pled to forcibly assault and the whole litany in the statute, then, of course, that's a risk that he would have had to take. But it does seem to me that in this particular instance, there was a substitution and he didn't plead to that and he pled to something lesser, probably, although I have to say, Your Honor, I can't prove it, specifically for immigration reasons. But regardless of the purposes, I think the general approach that the Court's taken in these situations is to look at the indictment, say, and ask itself, could he have done something that would meet this indictment that would not be a crime of violence, you know, absent, of course, other evidence like a hearing or something like that, which there isn't here. And it seems to me quite easy to conclude that the answer to that question is yes. So, anyway, that's my pitch on this particular topic. So if Your Honors don't have questions anymore, I'll sit down and await my learning counsel. All right. You may reserve the remainder of your time. Thank you. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, nor ask that we shores for Respondent Eric Holder. There are no mysteries in this case regarding the conviction. He pled specifically to 8 U.S.C. 111a, about which there are some questions. But he also pled to 111b, which involves the use of force. And there can be no question, therefore, that he's been convicted for a crime involving violence in an aggravated felony. The documents are all here, page 42 of the record, and all the documents in the agreement to the pre-sentencing. And he's pled to everything he could. The judgment, right, describes the offense only as resisting or impeding the Federal officer. Yes, but the B, section B, that's 111a, but 111b adds by use of force, and he pled guilty to that. He took a three-level enhancement for the threatened use of a weapon, and a two-level enhancement for creating, recklessly creating, a substantial risk of death or serious bodily injury. That was in the plea agreement, which he signed with counsel. So there really is no basis to say that he did not or was not convicted for a crime of violence, nor do we have someone who's new to the system. He had a prior conviction for port running. He had he was arrested with importing 27.6 pounds of marijuana and a minor shoplifting. These crimes were all forgiven when he was given cancellation of removal in 1994, faced a great deal, 1999, I believe. And he expressed remorse and said he would not be before the immigration court again. But he can't get another grant of cancellation. He's had many, many hearings. He had the hearings that brought him the grant of cancellation in 1999, went through the immigration proceedings then. In this case, he had all his full due process with two hearings before the immigration judge on two subjects, because when the record went up to the board, the board didn't have the decision, so they sent it back. And he had another hearing. I mean, it wasn't just to enter to correct what was wrong. It was another hearing. I also want to point out that the focus, the who carries the burden of proof, it has never been denied or contested that the government proves alienage. And in this case, the charge of alienage was not as an aggravated felon or as a controlled substance violator. It was for having committed a crime involving moral turpitude. That was proven and has never been challenged. So now we're not looking to prove the elements of the crimes. We're just looking, it's his burden after that to prove his eligibility for relief, and he has not done that. Are there any other questions? Let me ask one question. In this case, do we review just the BIA order? Yes, Your Honor. That's one of those cases, right? Yes, Your Honor. We don't. We shouldn't be concerned with what the IJ did. No, the IJ made a complete decision, said, I agree with the immigration judge and this is why, and but did its own reasoning so that we don't get back to the immigration judge's decision. And I also would like to point out that if he felt that the pleading guilty to B was a mistake, he's had five years to correct it, and that's an attack on the criminal And we have heard that in this proceeding. So the government would urge the Court to deny the petition for review. Thank you, Your Honors. Very briefly, Your Honors. Thank you. On this first argument about the enhancements, I have to confess I did not find evidence of those enhancements in the record, and I did not see it cited in the government's opposition brief. When you say the enhancement, you're talking about the section, subsection B? No, Your Honor. I was going to mention, get to that next. All right. I was addressing her suggestion, counsel's suggestion that because of the amount to which he was sentenced and what he was the process under the sentencing guidelines, something should be inferred from that. And I don't actually think that is in the record. I'm not disputing whether or not it's true, because I don't know. But I did review the record carefully, and I also, you know, did not see that cited to in the opposition. And I think if it had been in the record, it would have been. Secondly, on the subsection B, that is a legitimate and somewhat thorny issue. I would say, though, that under subsection B, does subsection B, even assuming that, you know, he's guilty of both A and B, does not actually require violence. It says use of a deadly or dangerous weapon. Here, I think it's undisputed that he drove away in a car. Now, a car, of course, could be used as a deadly and dangerous weapon, but a car also could be used to get on the highway. It's not clear to me that you couldn't be convicted under B for fleeing in a car. And it seems to me, given that there is no evidence in the record of what actually happened, we're constrained by my conviction. Wait a minute. What are you saying? That even though the conviction necessarily involves the use of a deadly weapon, that it's not a crime of violence? I think there are instances, Your Honor, in which you could use a deadly or what might be a deadly weapon in a nonthreatening manner. You'd still be using a deadly weapon, but you wouldn't be using it in a forceful or violent way. Well, then, doesn't that get us to that, you know, that Supreme Court case of — I don't think it would, Your Honor, in this particular instance, because the sentence would have been the same with or without B, because under Subsection A, you can be in prison for up to three years. It was a 14-month year. And so I don't think there's actually a bit that's applicable here, Your Honor. Okay. Okay. Thank you, Your Honor. We appreciate your time. Thank you. Thank you, and thank you again for participation in our program. The case just argued is submitted for decision.
judges: Schroeder, Roth , Tashima